UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 5:25-cr-82-TPB-PRL

WALTER KALTZ BRIGGS,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant Walter Briggs's "Motion to Suppress," filed by counsel on November 13, 2025. (Doc. 21).  On December 1, 2025, the United States of America filed a response in opposition to the motion. (Doc. 29).  The Court held a suppression hearing on December 11, 2025. (Doc. 32).  After reviewing the motion, response, testimony, evidence, legal arguments, court file, and the record, the Court finds as follows:

### Background

The facts are largely undisputed.  On May 5, 2025, at approximately 9:15 pm, two Marion County Sheriff's Office ("MCSO") patrol deputies were conducting traffic enforcement on East Highway 40 (known as Silver Springs Boulevard) in Silver Springs, Florida.  The deputies encountered a 2011 gold Buick sedan with defective tail lights.  Specifically, the deputies observed that the passenger side tail light was emitting white light from the rear of the vehicle.  The vehicle also did not have a functioning driver side tail light.

Deputy Trenton Adams initiated a traffic stop.  Defendant Walter Briggs was the sole occupant, driver, and the titled owner of the vehicle.  As noted, the stop occurred at

"full night" and there was no natural light present, as confirmed by dash camera footage, body camera footage, and testimony.

As Deputy Adams approached Defendant's vehicle, Defendant told the officer, "Dude, I already know why [you stopped me]." Deputy Adams responded by telling Defendant that his tail lights were not properly functioning. Defendant apparently thought that Deputy Adams stopped him for the tag, noting that "it comes back to a wanted man" and telling Deputy Adams that he had just purchased the car an hour and a half ago. Deputy Adams asked Defendant for his driver's license, which Defendant was unable to provide. Apparently, Defendant admitted that he did not have a valid driver's license, and MCSO dispatch confirmed that Defendant's license had several active suspensions connected to controlled substance convictions.

The deputies arrested Defendant for driving with a suspended license. Following the arrest, the deputies conducted an inventory search of the vehicle and discovered a .22 caliber rifle and associated ammunition. He has been charged in the instant case with possession of a firearm or ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

In his motion, Defendant challenges the legality of the traffic stop. Defendant argues that because the vehicle had two operational rear brake lights and additional lights as required by Florida law, he was not in violation of § 316.222(1), *F.S.*, which requires that at least two stop lamps on the rear of the vehicle that display red or amber lights visible from 300 feet. Defendant requests that the Court suppress all evidence derived from the search, including the firearm and ammunition found in the vehicle.

## Legal Standard

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred . . . and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 690, 699 (1996)).

## Analysis

Upon review, the Court finds that the traffic stop was lawful because the officers had probable cause to believe that the driver of the vehicle committed a traffic infraction. The Court finds the testimony of Deputy Adams to be credible, including his testimony that he observed the sedan with nonfunctioning tail lights. In addition, the Court viewed video from the stop, which further supports the officer's testimony as to the encounter.

Florida law requires that every motor vehicle have "two or more stop lamps meeting the requirements of section 316.234(1)." *See* § 316.222(1), *F.S.* Furthermore, § 316.234(1) requires that the stop lamps "on the rear of the vehicle . . . display a red or amber light, visible from a distance of not less than 300 feet to the rear." Florida courts have held that "the section of chapter 316 that enumerates the requirement for tail lights does not prohibit the operation of a vehicle with nonfunctioning tail light where there are two other fully operational lights." *Green v. State*, 301 So. 3d 418, 421 (Fla. 2d DCA 2020) (citations omitted). And so, "[f]or the stop to have been lawful, where the vehicle was

otherwise in compliance with the requirements of section 316.222, the broken tail light must have posed a safety hazard." *See id*.

Defendant relies primarily on *Green* to argue that there was no traffic infraction. This case, however, is highly distinguishable on its facts. In *Green*, the defendant was pulled over due to his vehicle having a broken left tail light *at 8:38 in the morning*. Due to the time of day of the stop, in the bright daylight, the broken tail light simply did not create an objectively reasonable suspicion that the vehicle was unsafe. *See id*. at 421-23. In contrast, in this case, there is credible testimony that the broken tail light – observed at 9:15 pm in "full night" – created an unsafe condition, including the possibility that the white light emanating could be confused for an oncoming vehicle.

Because the vehicle had a broken tail light that created a safety concern, the officers had probable cause, or at least reasonable suspicion, to believe that the driver of the vehicle committed a traffic infraction. Therefore, the officers had a lawful basis to initiate the traffic stop. The motion to suppress is denied.

**DONE** and **ORDERED** in Chambers, in Ocala, Florida, this 16th day of January, 2026.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE